## GUARDIAN TRUST CO. OF HOUSTON, TEX., v. JEFFERSON LAKE OIL CO., Inc.

### No. 7957.

Circuit Court of Appeals, Fifth Circuit.

July 28, 1936.

Rehearing Denied Aug. 27, 1936.

Luther E. Hall, of New Orleans, La., and W. D. Gordon, of Beaumont, Tex., for appellants.

E. Howard M'Caleb and Eugene H. Walet, Jr., both of New Orleans, La., and Edward T. Weeks, of New Iberia, La., for appellees.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

This suit was brought by Guardian Trust Company of Houston, executor and trustee of the estate of Benjamin Andrews, joined by his widow, Mrs. Mabel Dalton Andrews and August E. Borsum, joined by W. M. Campbell and W. D. Gordon, each claiming an interest by assignment from Borsum, against Jefferson Lake Oil Company, Inc., to establish ownership of a royalty of 5 per cent. in all the sulphur produced and marketed from certain land described in the bill, owned by defendant, and for other equitable relief. After a hearing on the merits, the bill was dismissed. The appeal is from that judgment.

The District Court made comprehensive findings of facts, from which the following appears.

Andrews and Borsum had acquired the right to use the Elbof method of electrical geophysical survey, a German invention, for the purpose of locating deposits of oil and other minerals. Apparently, under this process deposits of minerals were to be determined by locating bad electrical conductors in the ground. Jefferson Oil & Development Company had been unsuccessfully exploring for oil in and around Jefferson Island, near New Iberia, La. No geophysical exploration had ever been made at Jefferson Island, but a salt dome was known to exist there and oil had been frequently found on the edges of salt domes in that vicinity. In April, 1927, the attention of the officers of Jefferson Oil & Development Company was directed to the Elbof method by an article in an oil journal written by Andrews. As the result of negotiation, a contract was entered into between Andrews and Borsum and said company whereby Andrews and Borsum were employed to make geophysical explorations of the company's land by the Elbof process. It was agreed that Andrews and Borsum should receive $3,000 as an advance payment to cover work for 30 days, and after that $100 per day, as the survey progressed. The provisions of the contract are not material to this case, except paragraphs 6 and 7, which are as follows:

"VI. The company agrees and obligates itself to assign to operators a 5% interest in the mineral rights in and to one tenth of the area surveyed by the operators under this contract. The operators to select the

royalty areas in tracts of approximately 40 acres. It is further specially agreed that when the work has been completed by the operators or their said group employees, the operators and the company shall draft a memorandum in writing setting forth by field notes and other accurate description the tract or tracts or portions of tracts of land from which the 5% mineral royalty interests above specified shall be received by the operators or their heirs and assigns. It being understood that this agreement shall be null and void and of no effect in the event no oil be discovered in commercial quantities by the company, if the location made by the operators be drilled by the company. It being understood, however, that the company does not bind itself to drill any locations made by operators.

"VII. It is understood and agreed that the survey mentioned herein by the Elbof method of electrical subsoil prospecting means that the operators are employed to locate and to define if located, the area of an oil pool or oil pools, or petroleum deposits under the land to be surveyed. But if other minerals than petroleum should be located in this survey, and such minerals except salt, may be reached with present day machinery and profitably produced in commercial quantities, then the same royalty interest mentioned in Article VI herein shall be granted to operators."

Two surveys were made by the Elbof method of lands lying to the north of the Jefferson Island salt dome, designated on a map as zones A and B. A report of these surveys stated that if a well was drilled in zone A it would encounter oil-bearing sand at a depth of approximately 4,500 feet. Borsum selected a location for this well. It was drilled to a depth of 5,933 feet, and no oil was found. At Borsum's suggestion the well was abandoned. As a result of drilling this well all the funds of the company were exhausted. New capital was secured and a new corporation was organized, Jefferson Lake Oil Company, defendant herein, which took over the leases and other property of the old company, including the contract with Andrews and Borsum.

A survey was made for defendant by Andrews and Borsum of the bed of Lake Peigneur, which is adjacent to Jefferson Island. Two areas of bad electrical conductors were located in land designated as zones C and D. The report of these surveys stated that if a well was drilled in zone C oil-bearing sand would be found at a depth of approximately 4,200 feet. Borsum made a location for drilling a well in zone C. The officers of the company feared that this location was on top of salt, but Borsum assured them it was not. The well was started and at a depth of 600 feet went through 200 feet of sulphur-bearing cap rock and the drill then struck solid salt. After boring 200 feet more the well was abandoned. Borsum was promptly informed of the finding of sulphur by long-distance telephone. Neither he nor Andrews made any claim for an interest in the sulphur at that time.

Andrews died in 1929 shortly after the sulphur was discovered. No claim of any kind was made on his behalf or by Borsum until about four years later, when this suit was filed. In the meantime, defendant had expended $300,000 to $400,000 in developing the property.

The District Court concluded that the sulphur under the bed of Lake Peigneur was not located by Andrews and Borsum by their geophysical survey using the Elbof method, but was accidentally discovered in drilling the well which Borsum erroneously located on top of salt. Consequently, they had no interest in the sulphur, under the contract. Only the conclusions of the District Court are objected to.

The case presents purely a question of fact, the decision of which depends upon the interpretation of paragraphs 6 and 7 of the contract set out above. In this, decisions construing other contracts, except as they announce general rules, are of little use. We deem it unnecessary to discuss the authorities cited by appellant.

It is perfectly clear that defendant was interested in discovering oil and not sulphur. From the information it had, it was probable that oil might be discovered on its property. It employed Andrews and Borsum to assist them in this search. It had no reason to suppose sulphur or other minerals would be found on its land.

Andrews and Borsum no doubt believed that the Elbof method of geophysical survey would disclose the presence of oil and other minerals as well. That it did not find oil was demonstrated by the practical results of the surveys. It was optional with defendant to drill or not. Unlike a lease owner executing a mineral lease and retaining a royalty, Andrews and Borsum had no interest in the oil or other minerals in place. If they located minerals their interest did not attach until defendant

elected to take their advice and drill. If they thought they had located sulphur it was their duty to say so in order that defendant might exercise its option to further explore for it or not. It is clear from the terms of the contract that the word "locate" was used in the sense of discover by the survey. It is equally clear that sulphur was not located by the survey and its discovery was purely accidental. Plaintiffs could derive no benefit from the discovery of the sulphur in this way and are not entitled to any interest in it. We concur in the ruling of the District Court.

Affirmed.

WALKER, Circuit Judge, concurred in the disposition of this case, but died before the opinion was handed down.